UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NOS.: 21-CV-81395-RAR
19-CR-80024-RAR

PAUL E. SENAT,

        Movant,

    vs.

UNITED STATES OF AMERICA,

        Respondent.

_____/

## REPORT AND RECOMMENDATION REGARDING AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE [ECF No. 6]

Paul E. Senat moves to set aside his conviction and sentence. 28 U.S.C. § 2255. A jury convicted Mr. Senat of one count of theft of Government property (18 U.S.C. § 641) and 9 counts of aiding in the preparation of false tax returns (26 U.S.C. § 7206(2)). Cr. ECF No. 103. The jury acquitted Mr. Senat of five other counts. CRDE 108.[1]

Mr. Senat now asserts his trial counsel was constitutionally ineffective in advising him about the charges and the Government's plea offers. I conducted an evidentiary hearing where Mr. Senat and his trial counsel both testified. For the following reasons, the Motion should be DENIED.

---

[1] "CRDE" refers to docket entries in criminal case number 19-80024. "ECF No." refers to docket entries in the civil case number 21-81395. "Hrg. Tr." refers to the transcript of the § 2255 hearing.

## I.      PROCEDURAL HISTORY

Mr. Senat was charged in a 15-count indictment on March 5, 2019.  CRDE 1; CRDE 32.  He was convicted after a jury trial.  CRDE 103.  He was sentenced to 90 months imprisonment, followed by 3 years of supervised release, $1,000 special assessment, and restitution of $9,779.84.  CRDE 133.  He timely appealed. CRDE 135.  His conviction and sentence were affirmed on June 14, 2021.  CRDE 150. The appellate mandate issued on July 13, 2021.  *Id.*  Mr. Senat did not seek a writ of certiorari from the U.S. Supreme Court, so his conviction became final 90 days after the judgment — September 12, 2021.

Mr. Senat timely filed his *pro se* § 2255 petition on August 10, 2021. ECF No. 1.  He filed an amended motion on October 25, 2021.  ECF No. 6.  The Government filed an Answer, ECF No. 12, and Mr. Senat filed a *pro se* Reply. ECF No. 15.  I appointed the Federal Public Defender to represent Mr. Senat on June 30, 2022.  ECF No. 16.  The Federal Public Defender filed a supplemental memorandum the day before the evidentiary hearing on December 6, 2022. ECF Nos. 28, 30.

## II.     LEGAL PRINCIPLES

A prisoner is entitled to relief under Section 2255 if the court imposed a sentence that (1) violated the Constitution or the laws of the United States; (2) exceeded its jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  So, "[r]elief under 28 U.S.C. § 2255

2

is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1998) (per curiam) (internal quotations omitted)). If a court determines it imposed a sentence in violation of Section 2255, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The movant bears the burden of proving by a preponderance of the evidence that vacatur of the conviction or sentence is required. *See Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017), *rehearing en banc denied by, Beeman v. United States*, 899 F.3d 1218 (11th Cir. 2018), *cert. denied by, Beeman v. United States*, 139 S.Ct. 1168 (2019); *United States v. Tarver*, 344 Fed. Appx. 581, 582 (11th Cir. 2009).

Whether there was ineffective assistance of counsel is measured under the two-prong test from *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. *Id.* at 690.

As to the first *Strickland* prong, the "standard for counsel's performance is 'reasonableness under prevailing professional norms.'" *Chandler v. United States*, 218 F.3d 1305, 1313. (11th Cir. 2000) (citing *Strickland*, 466 U.S. at 688). A petitioner must prove by a preponderance of the evidence that counsel's performance was objectively unreasonable. *Chandler*, 218 F.3d at 1313, 1315. The judiciary's scrutiny

3

of counsel's performance is highly deferential. *Id.* at 1314. There is a strong presumption that counsel's performance was reasonable and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (citing *Darden v. Wainwright*, 477 U.S. 168 (1986)). Trial counsel has an obligation to communicate and explain plea offers to the defendant. *Missouri v. Frye*, 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

As to the second prong, a defendant establishes prejudice by showing that but for counsel's deficient performance there is a reasonable probability the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id.* "[I]n order to show prejudice under *Strickland*'s two-part test, a defendant must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; and (2) the plea would have resulted in a lesser charge or a lower sentence." *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (first citing *Frye*, 566 U.S. at 147; then citing *Lafler*, 566 U.S. at 174).

## III.   DISCUSSION

A. *Petitioner's Claims*

The *pro se* Amended Petition alleged four grounds for vacating Mr. Senat's conviction and sentence:

4

1.  Trial counsel did not explain the advantages and disadvantages of pleading guilty versus going to trial;

2.  Trial counsel did not explain the relevant laws to Mr. Senat;

3.  There was an accumulation of errors by trial counsel, including failing to properly communicate with Mr. Senat before the trial, and failing to call defense witnesses identified by Mr. Senat.

4.  Trial counsel failed to explain the Sentencing Guidelines to Mr. Senat.

ECF No. 6.  Appointed Counsel's supplemental memorandum abandoned Claim 3 and clarified the legal bases for Claims 1, 2, and 4 as:

1.  Trial counsel did not fully explain the Sentencing Guidelines;

2.  Trial counsel did not adequately explain the elements of the crimes charged, in particular the concept of aiding and assisting under 26 U.S.C. § 7206(2);

3.  Trial counsel "pushed Senat to trial when it was not in Mr. Senat's best interests and gave inadequate notice and time with respect to the [plea offers]."

ECF No. 28 at 4-5.  I therefore only address the claims asserted in the supplemental memorandum.

B. *The Plea Agreements*

The Government's first plea offer was made on or about July 22, 2019. Hrg. Tr. at 46.  It called for Mr. Senat to plead guilty to four charges:  two counts of aiding and assisting the preparation of false tax returns, and one count each of theft of government funds and aggravated identity theft.  Def. Hrg. Ex. 3.  The theft count

had a ten-year maximum sentence; the tax counts had three-year maximum sentences; the aggravated identity theft charge required a mandatory consecutive sentence of two years.  There were also potential fines of $250,000 per count and mandatory restitution of $9,779.84.  The parties would recommend a Sentencing Guideline base offense level of 26 (based on an agreed tax loss of more than $9.5 million), a two-level increase for being a tax preparer, and a three-level reduction for accepting responsibility.  The jointly-recommended advisory sentencing range would have been 57-71 months.

A second plea agreement was sent to defense counsel on or about August 1. Hrg. Tr. at 45; Def. Hrg. Ex. 4.  That plea agreement called for Mr. Senat to plead guilty to one count of theft of Government property and two counts of aiding and assisting the preparation of false tax returns.  He would have been exposed to a 16-year statutory maximum penalty, but no mandatory minimum.  The plea agreement also called for the same jointly-recommended Sentencing Guideline calculation but now included a jointly-recommended sentence of 65 months and a waiver of Mr. Senat's appellate rights.  It was otherwise essentially the same as the first plea offer.

On August 23, 2019, at 9:44 p.m., the Government sent another revised plea agreement to trial counsel.  Def. Hrg. Ex. 5.  The new offer called for Mr. Senat to plead guilty to two counts of aiding and assisting the preparation of false tax returns. In contrast to the first plea offer, there was no mandatory minimum sentence and the maximum sentence was six years, not 18 years.  The only agreement on the

Sentencing Guidelines was that the Government agreed to recommend a three-level reduction for accepting responsibility. The parties reserved the right to seek additional Guidelines enhancements or reductions that had not been part of the first plea offer, including an enhancement for Mr. Senat's role in the offense. *See* Hrg. Tr. at 51-52. There also was no agreement on the restitution amount. The plea offer expired five days later, on August 29, 2019 at 5:00 p.m.

 On August 28 at 4:47 p.m., trial counsel emailed the Government's lawyers. He said, "[I] spent practically all afternoon with my client. He seems to have some difficulty understanding the entire process. More certainty would be important. I believe if we could come to an agreement regarding the relevant conduct, that would make more sense to Mr. Senate.[sic]" Def. Hrg. Ex. 5. The Government responded that it could agree that the tax loss exceeded $9.5 million.

C. *Mr. Senat's testimony*

Trial counsel discussed the first plea offer with Mr. Senat: "I came in and Mr. Mitchell told me it was a plea for like eight, nine years." Hrg. Tr. at 10. Trial counsel did not review or explain the Sentencing Guidelines to him. *Id*. at 11, 18, 26. Trial counsel did not review the charges or the elements of the charged crimes. *Id*. at 11. Mr. Senat would not take the first plea because it was for eight to nine years of incarceration. *Id*. at 19.

In August, Mr. Senat and trial counsel met with the prosecutors for a "reverse proffer" where the Government laid out its evidence against Mr. Senat. *Id*. at 12-13.

After that meeting, Mr. Senat spoke to some friends and family about the case. *Id.* at 13. He spoke to someone he met through Legal Works. *Id.* He also spoke to someone who had experience with IRS audits; that person recommended he accept a plea. *Id.* at 14. He also spoke to "another lady who knows — actually, she does law, she works with — she actually does law — she is not a lawyer, but she works with people who — she helps out, she helps out. I don't know who she is, but she was a great help to me." *Id.* at 15. She also recommended he take a plea. *Id.* She was "talking about five, six years." *Id.* at 16-17. His friends and family "were pushing [him] into a plea deal." *Id.* at 16.

Trial counsel presented the last plea offer to Mr. Senat on August 28. *Id.* at 17. Trial counsel explained that this plea was to two counts, not four. *Id.* at 18. Mr. Senat read the plea agreement. *Id.* He testified,

> I said I really want to take the plea, but the only problem I had with that plea was, he didn't — we didn't know how much time I was going to receive. All I kept asking him, how many years, how many years, how many years. He couldn't tell me the years. I said, how can I take a plea? I asked him, is it the same plea with the eight, nine years? He said he couldn't tell me no time.

*Id.* at 17.

Mr. Senat would have taken a plea of five to six years imprisonment. *Id.* at 19-20. Trial counsel never explained that he could plead to a term of five to six years. *Id.* at 20.

D. *Trial Counsel's testimony*

Trial counsel testified that he explained the elements of the charged offenses and reviewed the plea offers with Mr. Senat. Hrg. Tr. at 35-37.[2] Part of that review was to discuss the Guidelines "generally." *Id.* at 36. That discussion included how accepting responsibility, the loss amount, and Mr. Senat's role in the offense would affect the Sentencing Guidelines calculation and the potential sentence. *Id.* at 37-38, 63-64. Trial counsel's recollection was that he and Mr. Senat discussed an advisory Guidelines range of around 65 months. *Id.* at 41, 64-67. Mr. Senat rejected the first plea agreement because he did not want to go to prison, at all. *Id.* at 40-41. Mr. Senat was unwilling to plead guilty if he was likely to receive jail time. *Id.* at 56, 59, 62.

Mr. Senat was frustrated that trial counsel could not tell him exactly how long of a sentence he would receive. Mr. Senat was accustomed to Florida state court where pre-agreed sentences are more common. *Id.* at 38-39.

E. *Claim One*

I credit trial counsel's testimony that he discussed the Sentencing Guidelines when he reviewed the plea offers with his client. Trial counsel recalled discussing a potential 65-month sentence with Mr. Senat. That number would have fallen in the middle of the first plea's jointly-recommended Guidelines range of 57-71 months and was specifically referenced in the second plea offer. Trial counsel also credibly

---

[2] Trial counsel was asked, "How many formal plea offers did [the Government] extend?" He testified, "I am aware of, with a little bit of variation, two." Hrg. Tr. at 37. He further testified that the August 1 plea offer was a modification of the July 22 one. *Id.* at 46.

testified that he generally explained the concept of loss amount and other Guidelines factors when he reviewed the plea offers with his client.  The two written plea agreements, Def. Hrg. Exs. 3 and 4, which counsel reviewed with Mr. Senat, also laid out the specific Guidelines calculations.  I do not credit Mr. Senat's testimony that counsel failed to explain the Guidelines.  Based on these findings, trial counsel's performance was objectively reasonable and therefore satisfied the first *Strickland* prong.

In any event, even if counsel failed to adequately explain the Guidelines, that deficiency did not cause prejudice under the second *Strickland* prong.  Both Mr. Senat and his trial counsel were consistent in testifying that Mr. Senat rejected the first plea offer because he thought the jail sentence was too long.  Having observed Mr. Senat's testimony, and as corroborated by trial counsel's contemporaneous email to the prosecutor on August 28, it is clear that Mr. Senat would not have accepted a plea offer without more certainty about the amount of jail time he was facing.  Moreover, I reject Mr. Senat's testimony that by August 2019 he would have accepted a 5-6 year plea.  He had already rejected a jointly-recommended sentence in that range.

## F.  *Claim Two*

Mr. Senat has not met his burden of showing that trial counsel failed to explain the elements of 26 U.S.C. § 7206(2).  Trial counsel credibly testified that he reviewed the elements of the offenses with Mr. Senat.  I reject Mr. Senat's testimony to the contrary.  No *Strickland* deficiency exists on this ground.

G. *Claim Three*

Mr. Senat also argued that trial counsel did not give him enough time to consider the second plea offer and that trial counsel had a motivation to encourage him to reject the plea offer because trial counsel stood to earn a $25,000 trial fee. Trial counsel credibly testified that the potential trial fee did not affect the legal advice that he gave to Mr. Senat.

For the reasons discussed above, Mr. Senat has not shown that he would have pled guilty if he had more time to consider the plea offer. At the end of the day, Mr. Senat was not willing to plead guilty without more certainty about his jail sentence. Under the federal sentencing scheme and the Guidelines, he was never going to get that certainty. At best, he would have known that his sentence could not exceed six years. He was unwilling to accept a plea that exposed him to that much time. No *Strickland* deficiency or prejudice exists on this ground.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court DENY the Motion to Set Aside, Vacate, or Correct Sentence.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his § 2255 motion has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See Jackson v. United States*, 875 F.3d 1089, 1090 (11th Cir.

11

2017) (per curiam) (citing 28 U.S.C. § 2253(c)(1)); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A Certificate of Appealability should issue only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Where a district court has rejected a movant's constitutional claims on the merits, a movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, a movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Here, applying these principles, no certificate of appealability should issue. If Petitioner does not agree, he may bring this argument to the attention of the District Judge in objections.

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, II, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the

district court's order based on unobjected-to factual and legal conclusions." 11th Cir.

R. 3-1 (2016).


**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach

County, in the Southern District of Florida, this 11th day of January 2023.


_____

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE